**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE JANE A. RESTANI, SENIOR JUDGE**

| | |
|---|---|
| RISEN ENERGY CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| JINGAO SOLAR CO., LTD., ET AL., | ) |
| | ) |
| Consolidated Plaintiffs, | ) |
| and | ) |
| | ) |
| SHANGHAI BYD CO., LTD., TRINA SOLAR CO., LTD., ET AL., | )   Consol. Court No. 20-03912 |
| | ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OBJECTIONS TO REMAND RESULTS OF CONSOLIDATED PLAINTIFFS JINGAO SOLAR CO., LTD., SHANGHAI JA SOLAR TECHNOLOGY CO., LTD., JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., HEFEI JA SOLAR TECHNOLOGY CO., LTD. AND JA SOLAR (XINGTAI) CO., LTD.**

Jeffrey S. Grimson
Sarah M. Wyss
Bryan P. Cenko
Yixin (Cleo) Li
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

November 7, 2022

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............................................1

STANDARD OF REVIEW ...................................................................................................2

ARGUMENT ........................................................................................................................3

**I.      COMMERCE'S REMOVAL OF THE EBCP WAS LAWFUL, BUT COMMERCE'S DETERMINATION THAT THE GOVERNMENT OF CHINA'S COOPERATION WAS NECESSARY TO ESTABLISH NON-USE REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW** ........................3

**II.     COMMERCE'S DETERMINATION TO CONTINUE TO INCLUDE THE 2010 CBRE REPORT FOR THE LAND BENCHMARK CALCULATION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW** ....................................................................................................................4

**III.    COMMERCE'S CONTINUED INCLUSION OF THE DESCARTES DATA IN THE OCEAN FREIGHT BENCHMARK WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW** ........................................9

**CONCLUSION**................................................................................................................10

i

## TABLE OF AUTHORITIES

**Cases**

AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 310 F. Supp. 2d 1347 (2004) ...............2

Canadian Solar, Inc. v. United States, 918 F.3d 909 (Fed. Cir. 2019) .................................................2

Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318 (Fed. Cir. 2020) ......................2

Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837(1984) ..........................................................................2

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938) ............................................................................2

Fujian Yinfeng Imp. & Exp. Trading Co. v. United States, Ct. No. 21-00088, slip op. 22-107 (Ct.
    Int'l Trade Sept.13, 2022) .............................................................................................................8

Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369 (Fed. Cir. 2003) ................................2

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983) ......2

NMB Sing. Ltd. v. United States, 28 CIT 1252, 341 F. Supp. 2d 1327 (2004) ..................................2

Risen Energy Co. v. United States, __ CIT __, 570 F. Supp. 3d 1369 (2022)..........................passim

SolarWorld Ams., Inc. v. United States, 910 F.3d 1216 (Fed. Cir. 2018) ..........................................2

**Statutes**

19 U.S.C. § 1516a ..............................................................................................................................2

**Regulations**

19 C.F.R. § 351.511(a).......................................................................................................................9

**Other Authorities**

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's
    Republic of China: Preliminary Results of Antidumping Duty Administrative Review and
    Preliminary Determination of No Shipments; 2016-2017, 83 Fed. Reg. 67,222 (Dec. 28, 2018)...6

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's
    Republic of China: Preliminary Results of Antidumping Duty Administrative Review and
    Preliminary Determination of No Shipments; 2017-2018, 85 Fed. Reg. 7,531 (Feb. 10, 2020) .....7

Consolidated Plaintiffs JingAo Solar Co., Ltd., Shanghai JA Solar Technology Co., Ltd., JA Solar Technology Yangzhou Co., Ltd., Hefei JA Solar Technology Co., Ltd. and JA Solar (Xingtai) Co., Ltd. (collectively, "JA Solar"), producers and exporters of the subject merchandise, submit comments in opposition to the remand redetermination filed by the U.S. Department of Commerce ("Commerce").  See Risen Energy Co., Ltd. v. United States, Consol. Ct. No. 20-03912, Final Results of Redetermination Pursuant to Court Remand (Oct. 7, 2022), ECF No. 94-1 (Public Version) ("Remand Redetermination").

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court remanded Commerce's Final Results in the sixth administrative review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from China for its reconsideration of the following three issues: 1) Commerce's determination that JA Solar benefitted from the Export Buyer's Credit Program ("EBCP"), 2) Commerce's selection of the 2010 Coldwell Banker Richard Ellis Asian Marketview Report for Thailand Industrial Land Report ("2010 CBRE Report") as a tier-three benchmark to assess the value of land-use rights, and 3) Commerce's inclusion of flawed Descartes data and determination to simple-average the Descartes data and the Xeneta data to calculate the ocean freight benchmark.  See Risen Energy Co. v. United States, __ CIT __, 570 F. Supp. 3d 1369 (2022) ("Remand Order").

Although JA Solar agrees with Commerce's removal of the benefits for the EBCP program, JA Solar continues to contend that cooperation by the Government of China ("GOC") is not necessary for determining non-use of the program.  Regarding the benchmark calculation for the land for less than adequate renumeration ("LTAR") program ("land program"), Commerce's continued inclusion of the 2010 CBRE Report in the remand redetermination was not supported by substantial evidence and not in accordance with law because Commerce failed to address the Court's concern with the "staleness" of this report.  Finally, Commerce's continued inclusion of the flawed Descartes data in

the ocean freight benchmark calculation was not supported by substantial evidence and not in accordance with law because Commerce failed to explain why including the Descartes data was necessary to arrive at a world market price and failed to refute the flaws of the Descartes data.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order.  See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004).  Further, any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B)(i) (2022); see also AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

Substantial evidence requires "more than a mere scintilla," see, e.g., Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (internal citation omitted), and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Moreover, substantial evidence supporting an agency determination must be based on the whole record, and the court shall consider not only the information that supports the agency's decision but also whatever in the "record fairly detracts from the substantiality of the evidence."  Changzhou Trina, 975 F.3d at 1326 (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)).

Further, the arbitrary and capricious standard requires that "Commerce's determination is the product of reasoned decision making" or "a reasoned explanation."  Canadian Solar, Inc. v. United States, 918 F.3d 909, 917 (Fed. Cir. 2019) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43-44 (1983)).

In reviewing Commerce's interpretation of its governing statutes, the court applies the two-prong standard established in Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-43 (1984).  First,

the court determines whether Congress' intent can be ascertained; if it can, the court "must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> at 843.  Second, the court determines whether the agency's interpretation of the statute is permissible.  <u>See id.</u> at 843-44.  The Court will only uphold agency interpretations that are reasonable.  <u>See id.</u> at 844.

**ARGUMENT**

I.   **COMMERCE'S REMOVAL OF THE EBCP WAS LAWFUL, BUT COMMERCE'S DETERMINATION THAT THE GOVERNMENT OF CHINA'S COOPERATION WAS NECESSARY TO ESTABLISH NON-USE REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

The Court granted Commerce's request for voluntary remand to reconsider its determination to assign a benefit to JA Solar under the EBCP using adverse facts available.  <u>See</u> <u>Remand Order</u>, __ CIT at __, 570 F. Supp. 3d at 1373.  In granting Commerce's request, the CIT set forth the following restrictions:

> On remand, the Government may attempt to verify the customer certifications of non-use.  If the Government decides to remove the EBCP from its subsidy calculation under protest but does not intend to appeal, it must explain on remand why the Court should not provide some form of equitable relief, such as the immediate return of deposits, or an injunction of the continued inclusion of the program with no attempt at verification that results in the temporary collection of funds that ultimately are not owed.

<u>Id.</u>  Consistent with the Court's instructions, Commerce conducted verification of JA Solar.  <u>See</u> Remand Redetermination at 4.  During verification, Commerce "corroborat{ed} JA Solar's claims that its sole importer/customer received no loans or other forms of financing during the POR and that it had no loans or other forms of financing outstanding during the POR."  <u>Id.</u> at 7.  Commerce "continue{d} to maintain that the GOC's cooperation is necessary for a true understanding of the EBCP," but nonetheless found that "the record on remand regarding usage of the EBCP does not contradict JA Solar's claimed non-use of the program" and "remov{ed} the EBCP subsidy rate from JA Solar's total <u>ad valorem</u> rate.  <u>Id.</u>  Although JA Solar agrees that Commerce's verification and

3

subsequent removal of JA Solar's benefits under the EBCP are consistent with the instructions from the Court, it nonetheless disagrees with Commerce's assessment that the GOC's cooperation is necessary for a full understanding of the EBCP and, therefore, finding non-use by the respondent. Commerce wrongly correlated missing information concerning the <u>operation</u> of the EBCP with the <u>usage</u> of the program; the very fact that Commerce successfully verified JA Solar's non-use of this program disproves any alleged missing information from the GOC.  <u>See</u> Mem. of P. & A. in Supp. of Rule 56.2 Mot. for J. Upon the Agency R. of Consol. Pls. at 8-16 (Aug. 13, 2021), ECF No. 53 (Nonconfidential Version) (JA Solar's Rule 56.2 opening brief discusses this issue in detail.)

II.     **COMMERCE'S DETERMINATION TO CONTINUE TO INCLUDE THE 2010 CBRE REPORT FOR THE LAND BENCHMARK CALCULATION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

The Court remanded Commerce's selection of the 2010 CBRE Report as a tier-three benchmark to assess the value of land-use rights.  <u>See</u> <u>Remand Order</u>, __ CIT at __, 570 F. Supp. 3d at 1376.  In remanding this issue, the Court reasoned that the 2010 CBRE Report "is stale compared to more contemporaneous benchmark data" and "since the 2010 CBRE Report was released, it appears that Thailand and China have diverged in terms of comparable national income levels and population density." <u>Id.</u> at __, 570 F. Supp. 3d at 1375-76.  In its remand redetermination, Commerce averaged Malaysian land values from the Malaysian Investment Development Authority Cost of Doing Business Report with and Thai land values from the 2010 CBRE Report.  <u>See</u> Remand Redetermination at 11; <u>see also</u> Mem. from Mark Hoadley to the File re: Upcoming Draft Remand Results – The Provision of Land for Less Than Adequate Remuneration – Malaysia: Costs of Doing Business (Public Document) (Aug. 8, 2022) (REM. P.R. 16);[1] Letter on Behalf of Risen Energy Co.,

---

[1] Documents contained on the Administrative Record Index for the remand proceeding are referenced as REM C.R. XX or REM P.R. XX. Documents cited from the Administrative Record Index from the underlying review will continue to be cited as C.R. XX or P.R. XX.

Ltd. to Dep't Commerce re: Rebuttal Information (Aug. 16, 2022) (Public Document) (REM. P.R. 22-23) ("Risen Land Rebuttal").  For the two reasons set forth below, Commerce's decision to include the Thai data in its benchmark calculation, instead of relying solely on the Malaysian land data was not supported by substantial evidence and not in accordance with law.

First, Commerce's analysis of the comparability factors in the remand redetermination to support its inclusion of Thailand as a tier-three benchmark source was unsupported by substantial evidence and not in accordance with law.  Commerce set forth that it considered three factors in selecting its benchmark source: (1) a similar level of economic development to China, (2) geographic proximity to China and (3) demographic comparability (such as population density) to China.  See Remand Redetermination at 9-10.  The Court questioned Commerce's inadequate explanation of the first and third factor and questioned the controlling weight Commerce granted to the geographic proximity factor.  Remand Order, ___ CIT at ___, 570 F. Supp. 3d at 1375-76 ("Thailand and China have diverged in terms of comparable national income levels and population density . . . the record does not adequately explain why Commerce granted controlling weight to geographic proximity in evaluating the land benchmark data, while disregarding other factors.").  In the remand determination, Commerce attempted but failed to establish the record to support its assessments of the first two factors, economic comparability and geographic proximity, rendering its three-factor comparability analysis unavailing.

For the economic comparability factor, Commerce found that Thailand and China are economically comparable based on their national income levels because both countries are "considered 'upper middle income' countries by the World Bank in terms of their level of economic development."  Remand Redetermination at 11 (citing Mem. from Mark Hoadley to the File re: Upcoming Draft Remand Results – Level of Economic Development (Aug. 8, 2022) (Public Document) (REM. P.R. 18) ("Level of Economic Development")).  As Commerce acknowledged,

although China and Thailand fall within the same income levels, their actual GNIs are quite disparate. <u>See</u> generally Remand Redetermination at 10.  Specifically, China has a GNI per capita of 8670 and Thailand has a GNI per capita of 5970.  <u>See</u> Letter on Behalf of JA Solar to Dep't Commerce re: Rebuttal Cmts on Level of Economic Development at Ex. 1 (Aug. 16, 2022) (Public Document) (REM. P.R. 21) ("JA Solar Land Rebuttal").  By contrast, Malaysia has a GNI per capita of 9950. <u>See</u> <u>id.</u>  In terms of percentages, Thailand's and China's GNI's differ by approximately thirty-one percent while Malaysia's and China's GNIs differ by approximately a mere fifteen percent.  <u>See</u> <u>id.</u> In short, even though China, Thailand and Malaysia may fall within the broad range of upper middle-income countries as defined by the World Banks, the difference between Thailand's and China's GNIs is almost twice that of the comparison between Malaysia's and China's GNIs.

Commerce claims that grouping all countries into four general economic levels (high income, upper middle income, lower middle income, and low income) to determine economic comparability is its "policy."  Remand Redetermination at 22.  JA Solar, however, is not "wish{ing}" for Commerce to "prioritize the closeness of per capita GNI in selecting a benchmark;" JA Solar is pointing out that Commerce's "policy" for selecting benchmark country based on the general label of middle-income countries, despite the disparity in GNIs, stands in contrast to Commerce's own findings in the parallel antidumping duty ("AD") case.  <u>Id.</u>  Specifically, while Thailand was still included in the surrogate country list in the fifth AD review, it was removed from the surrogate country list in the sixth AD review.  <u>Compare</u> <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2016-2017</u>, 83 Fed. Reg. 67,222 (Dep't Commerce Dec. 28, 2018), and accompanying Dec. Mem. at 17 <u>with</u> <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No</u>

Shipments; 2017-2018, 85 Fed. Reg. 7,531 (Dep't Commerce Feb. 10, 2020), and accompanying Dec. Mem. at 15.  The Court explained that Commerce's surrogate country decision in a separate AD proceeding was a relevant reference for Commerce's economical comparability decision in the CVD proceeding, especially with regard to GNI levels.  Remand Order, __ CIT at __, 570 F. Supp. 3d at 1375.  Commerce's alleged policy, therefore, is unreasonable and unsupported by substantial evidence due to the substantial disparity between China and Thailand's GNIs and to Commerce's contrary surrogate country decision in the AD proceedings.

       With regard to the geographic proximity factor, Commerce stated that it is of "critical importance" for Commerce to select a benchmark country source but continued to fail to provide adequate explanation.  Remand Redetermination at 12.  To support this conclusion, Commerce cited to a finding from the "Japan External Trade Organization" that "Thailand ranked second to China as location for expanding both high and mid-to-low-end production."  Id. (citing Mem. from Gene Calvert to the File re: Land for LTAR Mem. at Attachment, p. 30 (Public Document) (Jan. 31, 2020) ("Land Analysis Mem.") (P.R. 203)).  This statement came from a benchmark analysis memorandum from Commerce.  See Land Analysis Mem. at 1 (P.R. 203).  Not only was Commerce's Land Analysis Memorandum dated in 2018, i.e., a year outside of the period of review ("POR"), but Commerce provided no citation to its statement from the Japan External Trade Organization.  See id. at pp. 1, 30. It is impossible, therefore, to verify this information or confirm whether it was contemporaneous with the POR.  In other words, there is no indication that Thailand competed with China as a source of foreign direct investment in 2017.

       Second, Commerce failed to address the Court's concern with the stale data from the 2010 CBRE Report.  See Remand Order, __ CIT at __, 570 F. Supp. 3d at 1375 ("Plaintiffs properly note that the 2010 CBRE Report is stale compared to more contemporaneous benchmark data and becomes staler with each successive administrative review.").  Commerce relied on the Court's affirmation of

the use of the same 2010 CBRE Report in <u>Fujian Yinfeng Imp. & Exp. Trading Co. v. United States</u>, No. 21-00088, slip op. 22-107 (Ct. Int'l Trade Sept.13, 2022), to rebut the staleness concern, as the investigation in that case covered 2019, two years later than the 2017 POR in this review.  <u>See</u> Remand Redetermination at 23 (citing <u>Fujian Yinfeng</u>, slip op. at 19-20).  In that case, Commerce simply had no other viable benchmark choices.  In affirming Commerce's use of the 2010 Thai prices and Commerce's rejection of the Malaysian prices proposed by the respondent, the Court stated that the respondent in that case did not establish Malaysia's comparability to China.  <u>See</u> <u>Fujian Yinfeng</u>, slip op. at 20.  This case is distinguishable because there is substantial record evidence of Malaysia's comparability to China and Commerce voluntarily used the Malaysian land values in the land benchmark calculation.   <u>See</u> Remand Redetermination at 11-13 (citing Level of Economic Development (REM. P.R. 18); JA Solar Land Rebuttal (REM. P.R. 21); Risen Land Rebuttal (REM. P.R. 22-23)).  Commerce's reliance on <u>Fujian Yinfeng</u>, therefore, did not answer the Court's question of why Commerce has the discretion to continue to use the aging and stale data from Thailand. Notably, the staleness concern with the 2010 Thai prices is separate from the staleness concern with Commerce's comparability analysis of selecting a benchmark country.  Even though Commerce did attempt (but failed) to update its comparability analysis with updated GNI and population density data, Commerce failed to recognize that the Thai prices form the 2010 CBRE report are stale compared to the more contemporaneous Malaysian data on the record and will become "staler with each successive review."  <u>Remand Order</u>, __ CIT at __, 570 F. Supp. 3d at 1375.  As Commerce did use Malaysian prices (by averaging them with the Thai prices) in the remand redetermination, its fixation on using the utterly outdated Thai prices was unsupported and unreasonable.  The question for Commerce is – when will Commerce cease using the 2010 Thai prices, with each successive review making them staler and staler?  Commerce never answered this question.

For these reasons, Commerce's continued inclusion of the 2010 CBRE Report, instead of reliance solely on the Malaysia prices, was not supported by substantial evidence and not in accordance with law.  JA Solar also incorporates by reference the comments from Risen Energy Co., Ltd. on this issue.

### III.   COMMERCE'S CONTINUED INCLUSION OF THE DESCARTES DATA IN THE OCEAN FREIGHT BENCHMARK WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

The Court remanded Commerce's ocean freight benchmark calculation to reconsider its inclusion of the flawed Descartes data as well as its determination to use a simple average of Descartes and Xeneta datasets.  See id. at __, 570 F. Supp. 3d at 1379.  The Court reasoned that the "Descartes data appears to be sourced from limited samples because many of the shipments use the same tariff codes and freight forwarder codes" and the Descartes rates are for "less than a container load . . . and that is more expensive than a normal commercial shipment rate."  Id. at __, 570 F. Supp. 3d at 1378-79.  The Court instructed that Commerce "discuss the identified flaws in the data."  Id. at __, 570 F. Supp. 3d at 1379.  Instead of complying with the Court's order, Commerce continues to skirt this analysis by merely finding that it "cannot conclude that the tariff codes or freight forwarder codes indicated in the petitioner's documents indicate a shipment method that an importer of the materials at issue would be unlikely to use."  Remand Redetermination at 15.  Commerce provides no explanation for this conclusion nor even attempt to discuss the record.  See id.  Similarly, Commerce states that it "does not believe a hypothetical importer would as a rule not buy less than a container."  Id. (emphasis added).  A belief cannot represent substantial evidence, the standard by which the Court reviews Commerce's decision.  JA Solar incorporates by reference the arguments made by Risen concerning the flaws present in the Descartes data, which Commerce failed to address pursuant to the Court's order and which establish that the Descartes data do not reasonably "reflect the price that a firm actually paid or would pay if it imported the product."  19 C.F.R. § 351.511(a)(2)(iv).

Besides the concern with the flawed Descartes data, the Court instructed Commerce to answer, "whether it is necessary to use the Descartes data to arrive at a 'world market' price." Remand Order, __ CIT at __, 570 F. Supp. 3d at 1379. The Court reasoned that even though Commerce generally has discretion to interpret the undefined regulatory phrase "world market price," "the Descartes data likely does not add to the accuracy of the benchmark calculation when there is the clearly acceptable Xeneta data available." Id. Commerce did not explain in its remand determination why the worldly Xeneta data itself does not satisfy the regulatory requirement for ocean freight benchmark, and why Commerce insisted on including the Descartes data representing only U.S. routes. Without such explanation, Commerce's remand determination is unsupported by substantial evidence.

For these reasons, Commerce's continued inclusion of the Descartes data was not supported by substantial evidence and not in accordance with law.

## CONCLUSION

For the reasons set forth herein, this Court should find that Commerce's remand redetermination remains unsupported by substantial evidence and not in accordance with law and remand to Commerce again with instructions to (1) continue to remove the 2010 CBRE Report for the land benchmark and to (2) remove the Descartes data for the ocean freight benchmark.

Respectfully submitted,

Dated: November 7, 2022

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Sarah M. Wyss
Bryan P. Cenko
Yixin (Cleo) Li
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to JA Solar*

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that these objections to the remand redetermination comply with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 3261 words.


Dated: November 7, 2022

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to JA Solar*